Jeffrey J. Hepworth, ISB No. 3455
J. Grady Hepworth, ISB No. 10364
HEPWORTH LAW OFFICE
2229 W. State Street
P.O. Box 2815
Boise, ID 83701-2815
Telephone:  (208) 333-0702
Facsimile:  (208) 246-8655
courtservice@idalawyer.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LORI TRUDEAU, an individual,<br><br>Plaintiff,<br><br>v.<br><br>RUAN TRANSPORTATION MANAGEMENT SYSTEMS, INC, a corporation, JOHN DOE CORPORATIONS I-V, unknown entities or subsidiaries,<br><br>Defendants. | Case No._____<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

COMES NOW the Plaintiff, Lori Trudeau, by and through her counsel of record, Hepworth Law Offices, for causes of action against the Defendant Ruan Transportation Management Systems, Inc. ("Ruan") and John Doe Corporations, hereby states and alleges as follows:

## I. PARTIES, JURISDICTION, AND VENUE

1.      The Plaintiff, Lori Trudeau, is at all relevant times herein a resident of the City of Meridian, County of Ada, State of Idaho.  Ms. Trudeau is a white female over the age of forty.

2.      Defendant Ruan Transportation Management Systems, Inc. ("Ruan"), is an Iowa corporation registered and doing business in the State of Idaho, with a registered agent as CT Corporation System, 921 S. Orchard St., Ste G, Boise, ID 83705. Ruan is believed to employ more than five

COMPLAINT AND DEMAND FOR JURY TRIAL - 1

hundred employees throughout the United States. Ruan's principal place of business in Idaho is located at 4912 E Franklin Rd, Nampa, ID 83687. Within the company, this location is known as Terminal T239.

3. Defendant John Doe Corporations I-V are unknown corporations or other forms of business entities that may have directly or indirectly employed Lori Trudeau and are liable for the acts of discrimination alleged herein, but whose identities and true names are not known at this time.

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1331. The Plaintiff asserts federal subject matter jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-2, 3 *et seq*, and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq*.

5. This Court has supplemental jurisdiction of the state law claims under the Idaho Human Rights Act, and tortious causes of action asserted herein pursuant to 23 U.S.C. § 1367. The factual basis of the state law claims brought under the Idaho Human Rights Act and tortious conduct are identical to the operative facts underlying the federal claims.

6. Venue is proper pursuant to 28 U.S.C § 1391 and 42 U.S.C. § 2000e-5(f)(3). The United States District Court for the District of Idaho is the federal judicial district embracing the City of Nampa, Canyon County, Idaho, where the unlawful employment practices were committed, and where the employment records relevant to such practice are maintained and administered.

7. Ms. Trudeau filed timely complaints with the Idaho Human Rights Commission ("IHRC") and the Equal Employment Opportunity Commission ("EEOC"). The IHRC and EEOC issued their Notices of Right to Sue on or about August 10, 2020. Less than ninety-days has elapsed since both agencies issued the Notices of Right to Sue, and Ms. Trudeau has exhausted all administrative remedies under law.

## II. GENERAL ALLEGATIONS

8. Ruan took adverse employment actions, retaliated, and otherwise discriminated against

COMPLAINT AND DEMAND FOR JURY TRIAL - 2

claimant Lori Trudeau ("Trudeau") during the course of her employment on the basis of gender in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2 *et seq.*, as well as on the basis of Age in violation of the federal Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq*. Ruan's conduct is also a violation of the Idaho Human Rights Act ("IHRA"), I.C. § 67–5909 *et seq.*

9. Ms. Trudeau began working at Ruan in approximately August 2012. Ms. Trudeau served as Ruan's Administrative Coordinator for approximately seven years.

10. Ms. Trudeau was employed at a rate of $19.00 an hour, plus time-and-a-half for overtime. On average, Ms. Trudeau's position required at least ten hours of overtime per week. Ms. Trudeau also receives extensive employment benefits, including life insurance, 401k retirement benefits, medical insurance, dental insurance, vision insurance, short-term and long-term disability coverage, as well as two weeks of flex time off and two weeks of accrued paid vacation, plus holidays. Ms. Trudeau received annual salary increases and promotions.

11. In approximately April 2017, Ruan hired Jon Douglas to work as Terminal Manager. Mr. Douglas served as Ms. Trudeau's direct supervisor.

12. On or about June 20, 2017, a Ruan driver named Brad Smith visited Ms. Trudeau and reported sexist and derogatory statements Mr. Douglas and co-worker Donald Patrick Anthony frequently made about her. Mr. Smith reported that Mr. Douglas and Mr. Anthony referred to Ms. Trudeau as "the cunt" (hereinafter "C-Word") and "the old dumb blonde bitch." Mr. Smith said that another co-worker, Scott Sundquist, could also attest to the sexist and discriminatory comments made about her age and gender.

13. That same day, Ms. Trudeau called Mr. Sundquist to inquire about the sexist and derogatory comments. Mr. Sundquist confirmed the frequent discriminatory statements.

14. Other employees, including Rick Allen and Noel Reese, also confirmed that Mr. Douglas and

COMPLAINT AND DEMAND FOR JURY TRIAL - 3

Mr. Anthony repeatedly referred to Ms. Trudeau as "the C-Word" and "that old dumb blonde bitch." The employees also indicated that other male employees referred to her as those terms when speaking with Mr. Douglas and Mr. Anthony.

15. On or about June 21, 2017, Ms. Trudeau engaged in protected activities under Title VII, the ADEA, and IHRA by calling Ruan's Regional Vice President, Tatum Moyer, and reported the sexist age discrimination she was receiving from her supervisor and Mr. Anthony. Ms. Trudeau mentioned that she would like to meet with Mr. Douglas personally to discuss the discrimination. Mr. Moyer indicated that he would look into the matter, and that he would call Ms. Trudeau back. Mr. Moyer failed to call Ms. Trudeau back.

16. On June 22, 2017, Ms. Trudeau again engaged in protected activities under Title VII, the ADEA, and IHRA when she met with Mr. Douglas and discussed the derogatory comments that he had made against her. During the meeting, Mr. Douglas stated "I can't speak for Pat [Anthony], but I don't talk like that to anyone." Ms. Trudeau simply requested that the matter be addressed to the staff, and that employees be reminded of Ruan's anti-harassment and anti-discrimination policies. Mr. Douglas simply replied "I'll think about it."

17. To Ms. Trudeau's knowledge, the matter was never formally addressed with Mr. Anthony or any other employees.

18. In approximately August 2017, Ruan began transitioning from their old office location in Meridian, Idaho, to their current location in Nampa, Idaho. Rather than keep Ms. Trudeau in the office with her male co-workers, Mr. Douglas required Ms. Trudeau to work remotely from home. However, Ruan failed to provide any of the necessary equipment, including computer, printer, or telephone services.

19. Ruan's requirement that Ms. Trudeau work from home significantly interfered with her ability to complete her job duties. The discriminatory work arrangement also resulted in high

COMPLAINT AND DEMAND FOR JURY TRIAL - 4

personal expenses, including travel costs (as she frequently had to travel back and forth between her home and the office to complete tasks), and telephone bills. Ms. Trudeau kept records of all business-related expenditures.

20. During this time, Mr. Douglas and Mr. Anthony began to place immense pressure on Ms. Trudeau to complete billing duties, which were exceedingly difficult while working remotely without a printer. Ms. Trudeau reached out to Ruan's IT department to potentially acquire a printer for use while she worked remotely. In response, Mr. Douglas made defamatory statements to several of Ruan's customers that Ms. Trudeau was "out of line" and suggested that Ms. Trudeau was trying to source equipment without permission. Ms. Trudeau maintains these allegations were pretextual, and were in fact motivated by their animus towards Ms. Trudeau's gender, age, and/or retaliation for her participation in protected activities.

21. On September 14–15, 2017, Ms. Trudeau had interactions with three different clients. Each of the clients reported that Mr. Douglas and Mr. Anthony were again repeating derogatory comments about her. The customers expressed their disgust regarding Mr. Anthony and Mr. Douglas's comments and demeanor towards Ms. Trudeau and other women.

22. On October 28, 2017, Ms. Trudeau turned in her expense report to Jon Douglas for the travel and cell phone expenses incurred in the last two months. Mr. Douglas and Mr. Anthony responded by calling a meeting with Ruan's corporate office. During the meeting Mr. Douglas and Mr. Anthony called into question Ms. Trudeau's integrity and accused her of submitting a fraudulent expense report. Ms. Trudeau alleges the conduct was pretextual and intended as retaliation for her prior protected activities under Title VII, the ADEA, and IHRA.

23. On October 30, 2017, Ms. Trudeau again engaged in protected activities under Title VII. the ADEA, and IHRA when she filed a complaint with Regional Human Resource Associate Ben Williams regarding the accusations against her, as well as Mr. Douglas's and Mr. Anthony's

discriminatory conduct and offensive statements. Mr. Williams stated that he would investigate.

24. On December 14, 2017, more than a month had passed and Ms. Trudeau had yet to receive any feedback regarding her complaint to regional human resources, nor had she received reimbursement for her expenses. Ms. Trudeau emailed Mr. Williams to ask about the investigation and her reimbursement. Mr. Williams eventually responded that Ms. Trudeau would receive her full reimbursement, and Mr. Williams stated that he had "counseled" Mr. Douglas and Mr. Anthony about Ruan's reimbursement policies. Ms. Trudeau again inquired whether there was an investigation being conducted about the constant derogatory and sexist behavior of Mr. Douglas and Mr. Anthony. Ms. Trudeau never received any feedback regarding her formal complaint to Regional Human Resources.

25. On February 26, 2018, Mr. Douglas called Ms. Trudeau into his office for her annual performance evaluation. Unlike all prior performance evaluations, Mr. Douglas gave Ms. Trudeau a "Needs Improvement." The result of the "Needs Improvement" evaluation would be that Ms. Trudeau would not qualify for annual bonuses from the prior year. Ms. Trudeau inquired what she had done to earn the "Needs Improvement" evaluation, and what she could have done to improve. Mr. Douglas responded, "I can't think of anything right now, but the Needs Improvement stays." Ms. Trudeau alleges the negative performance evaluation was discriminatory and retaliation for her previous protected activities and complaints to Human Resources.

26. On February 27, 2018, Ms. Trudeau again engaged in protected activities under Title VII, the ADEA, and IHRA when she filed yet another complaint with Regional Manager Tatum Moyer and Regional Human Resources Associate Ben Williams regarding the discriminatory and retaliatory performance evaluation. Mr. Williams and Mr. Moyer each acknowledged the conclusory nature of the performance evaluation, but refused to take any corrective action or commence a formal investigation.

27. Faced with the fact that regional management refused to take any action, Ms. Trudeau again engaged in protected activities under Title VII, the ADEA, and IHRA on February 28, 2018, by filing an additional complaint with Erin Peterson and Pat Paterson in Ruan's Corporate Human Resources department regarding the discrimination and retaliation by Mr. Douglas.

28. On April 10, 2018, Ms. Trudeau had still not received any feedback or update regarding her performance evaluation, and reached out to Erin Peterson again. Erin responded that Mr. Douglas had already been counseled that the February 2018 performance evaluation had not been completed properly, and that Mr. Douglas was supposed to have updated her evaluation. Ms. Trudeau was included on an email from Erin Peterson to Mr. Douglas, asking why Ms. Trudeau had not already been updated.

29. In May 2018, Jon Douglas left employment with Ruan. Ms. Trudeau is not aware of the circumstances surrounding his departure. Mr. Anthony was promoted to serve as interim Terminal Manager. Mr. Anthony was later hired as the full-time Terminal Manager, and Ms. Trudeau's direct supervisor.

30. In July 2018, former Dispatch Manager Saadi Fahmi reported to Ms. Trudeau that he observed a significant amount of hostility towards Ms. Trudeau, and that Mr. Anthony and other male employees were still regularly referring to her as "the old dumb blonde bitch" and "the C-word." Ruan continued to isolate Ms. Trudeau and retaliate.

31. On April 12, 2019, Mr. Anthony requested a meeting with Ms. Trudeau. Mr. Anthony informed Ms. Trudeau that her hours were being reduced to thirty-two hours per week. In addition to significantly reducing her wages, Ms. Trudeau would also lose her employment benefits such as health insurance, 401K, and disability coverage. Ms. Trudeau alleges the effective demotion was illegally motivated by Ruan's prejudice regarding her age and gender, as well as retaliation for her participation in protected activities under Title VII, the ADEA, and IHRA.

32. On April 12, 2018, Ms. Trudeau again engaged in protected activities under Title VII, the ADEA, and IHRA by filing a complaint with Corporate Human Resources. Ms. Trudeau complained that the reduction in her hours appeared to be discriminatory and/or retaliatory given the long history of discrimination by Mr. Anthony.

33. On April 15, 2019, Ms. Trudeau spoke with Pat Paterson from Ruan's Corporate Human Resources about the discriminatory schedule change. Pat Paterson informed Ms. Trudeau that of the thirty-five drivers and four dispatchers at the Nampa location, she was the only employee whose base hours were being restricted.

34. On April 17, 2019, Ruan adjusted Ms. Trudeau's base pay to reflect thirty-six hours per week to allow her to keep her benefits. However, Ms. Trudeau alleges that the continued reduction of her hours to thirty-six hours per week is nevertheless motivated by animus regarding her age and gender, and is an adverse action in violation of Title VII, the ADEA, and IHRA. Ms. Trudeau has suffered lost wages and reasonably expects to suffer future lost wages as a result of Ruan's illegal discrimination and retaliation.

35. Although Ms. Trudeau protested the reduction in base wages, Ms. Trudeau sought to compromise with her employer, and requested that if her hours were going to be reduced by eight hours every two weeks, that she be allowed to work full-time, except take every other Friday off. The schedule accommodation would have saved her money for her commute. Ruan denied the accommodation without any valid basis.

36. On June 30, 2019, Ruan's Dispatchers and Ms. Trudeau were given pay raises. Ms. Trudeau received a minimal 1% raise, which was the lowest of her career at Ruan. Upon information and belief, Ms. Trudeau alleges her raise was significantly less than her younger male counterparts.

37. Left with no other internal alternatives, Ms. Trudeau filed a charge of discrimination with the EEOC and Idaho Human Rights Commission, which was received on August 13, 2019. The charge

COMPLAINT AND DEMAND FOR JURY TRIAL - 8

of discrimination set forth all of the above charges.

38. Ruan responded to the allegations in a response statement dated September 30, 2019, in which Ruan admitted that Ms. Trudeau was subjected to inappropriate conduct and violations of company policies in the scope of her employment, but otherwise denied liability for the company's discrimination and retaliation.

39. Ms. Trudeau submitted a rebuttal statement, pursuant to the policies and procedures of the IHRA and EEOC, including emails and the signed affidavit of witnesses, corroborating Ms. Trudeau's claims of age and gender discrimination and retaliation, and fully rebutting the conclusory defenses alleged by Ruan in its response.

40. Following Ms. Trudeau's charge of discrimination, Ruan deliberately retaliated and created a hostile work environment in an attempt to force Ms. Trudeau to resign. Shortly after filing her charge of discrimination, packages addressed to her went missing in the Ruan office, Ms. Trudeau would arrive to work to find her office heaters turned off, causing her office to be miserably cold, and her co-workers generally isolated her from ongoing business activities. Ms. Trudeau sent a formal complaint to Mr. Anthony on or about October 3, 2019. Ms. Trudeau reasonably feared future retaliation and adverse actions.

41. On January 14, 2020, Ruan Transportation Management Systems, Inc., acting by and through its agents and employees, terminated Ms. Trudeau, effective immediately.

42. Termination is an adverse action, as defined by Title VII, the ADEA, and the IHRA. The decision to terminate was motivated by Ruan's prejudice regarding Ms. Trudeau's gender and age, and as retaliation for her participation in the above-referenced protected activities.

43. The decision to terminate was motivated by retaliation for Ms. Trudeau filing complaints with her human resources department, as well as Ms. Trudeau's participation in protected activities with the EEOC and Idaho Human Rights Commission.

44. Ms. Trudeau filed a supplemental charge of discrimination with the EEOC and Idaho Human Rights Commission on January 14, 2020, arising from Ruan's retaliation and adverse actions.

45. Ruan's discrimination and retaliation against Ms. Trudeau has been continuous, systemic, and egregious. Ruan's conduct over the past two years has created an objectively hostile work environment, and is therefore actionable under the Continuing Violation Doctrine.

46. Ms. Trudeau alleges that the discrimination and retaliation is willful and knowing, and has resulted in significant emotional harm. Ms. Trudeau seeks general damages for the stress and anxiety caused by Ruan's misconduct, and reserves the right to seek punitive damages.

### III. CAUSES OF ACTION

### COUNT ONE:

### Gender-Based Discrimination in Violation of Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e-2(a)

47. Ms. Trudeau realleges and incorporates by reference all paragraphs set forth above.

48. Title VII, 42 U.S.C. § 2000e-2, prohibits employment practices that discriminate against persons on the basis of their gender.

49. Ms. Trudeau was subjected to verbal harassment and adverse employment actions because of her gender.

50. The conduct was so severe and pervasive that reasonable persons in Ms. Trudeau's position would find their work environment to be hostile or abusive.

51. The abuse and harassment were primarily perpetrated by her direct supervisors. Furthermore, management level employees knew, or should have known, of the abusive conduct. Moreover, the harassment was so pervasive and open that a reasonable employer would have had to have been aware of it.

52. As a direct and proximate result of the discrimination, Ms. Trudeau sustained, and will continue to sustain economic and emotional injuries resulting in damages in an amount to be proven at trial.

53. Defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Ms. Trudeau's right to be free from discrimination on the basis of her gender

54. Ms. Trudeau was wrongfully terminated on or about January 14, 2020 due to discrimination and/or retaliation on the basis of her gender.

55. As a result of Defendants' discrimination and retaliation, Ms. Trudeau suffered substantial damages, including past and future lost wages, loss of earning capacity, lost retirement and insurance benefits, lost healthcare, and general damages of pain, suffering, emotional distress, and loss of enjoyment of life.

56. Ms. Trudeau is entitled to reasonable attorneys' fees, expert fees, and costs of suit.

## COUNT TWO:

### Retaliation in Violation of Title VII of the Civil Rights Act of 1964, *as amended* 42 U.S.C. § 2000e-3

57. Ms. Trudeau realleges and incorporates by reference all paragraphs set forth above.

58. Title VII of the Civil Rights Act of 1964, as amended, prohibits employers from discriminating against an employee "because [s]he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).

59. Ms. Trudeau made informal and formal complaints to Defendants' agents and employees opposing Defendant's unlawful, discriminatory employment practices motivated by her gender.

60. As a result of Ms. Trudeau's complaints, Defendants' agents and employees took materially adverse actions against Ms. Trudeau, including, but not limited to, issuing disciplinary warnings; threats of termination; reprimands by supervisors; and ultimately termination.

61. Defendant's adverse actions constituted retaliatory workplace harassment.

COMPLAINT AND DEMAND FOR JURY TRIAL - 11

62. Defendant's retaliatory actions were sufficient to deter a reasonable person from engaging in protected activities under Title VII.

63. As a direct, legal and proximate result of Defendant's retaliation, Ms. Trudeau suffered substantial damages, including past and future lost wages, loss of earning capacity, lost retirement and insurance benefits, lost healthcare, and general damages of pain, suffering, emotional distress, and loss of enjoyment of life.

64. Plaintiff is entitled to her reasonable attorneys' fees, expert fees, and costs of suit.

## COUNT THREE:

## VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C. § 623 *et seq.* ("ADEA")

65. Ms. Trudeau realleges and incorporates by reference all paragraphs set forth above.

66. Ms. Trudeau is an individual over the age of forty years of age protected under the ADEA.

67. Ms. Trudeau was the subject of countless age-related and discriminatory remarks from her supervisors while employed at Ruan.

68. Ms. Trudeau opposed Defendants' unlawful discrimination, and made charges arising from the discrimination, as well as participated in the investigation(s), proceedings, and litigation under this chapter.

69. Ms. Trudeau suffered adverse employment actions and retaliation, including pretextual discipline, demotions, and ultimately termination because of Defendants' discrimination and retaliation.

70. Upon information and belief, Ms. Trudeau was effectively replaced by significantly younger employees.

71. As a result of Defendants' discrimination and retaliation, Ms. Trudeau suffered substantial damages, including past and future lost wages, loss of earning capacity, lost retirement and insurance benefits, lost healthcare, and general damages of pain, suffering, emotional distress, and loss of

COMPLAINT AND DEMAND FOR JURY TRIAL - 12

enjoyment of life.

72. Plaintiff also seeks reasonable attorneys' fees, expert fees, and costs of suit.

## COUNT FOUR:

## VIOLATION OF I.C. § 67-5909 *et seq.* ("IHRA")

73. Ms. Trudeau realleges and incorporates by reference all paragraphs set forth above.

74. The IHRA prohibits employers from discriminating because of gender and age.

75. The IHRA also prohibits any business entity subject to regulation by this chapter to discriminate against any individual because she has opposed any practice made unlawful by this chapter or because such individual has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation.

76. Ms. Trudeau was subjected to verbal harassment and adverse employment actions because of her age and gender.

77. The conduct was so severe or pervasive that reasonable persons in Ms. Trudeau's position would find their work environment to be hostile or abusive.

78. Management level employees knew, or should have known, of the abusive conduct. Moreover, the harassment was so pervasive and open that a reasonable employer would have had to have been aware of it. Management level employees were themselves complicit in the abusive conduct.

79. Ms. Trudeau made informal and formal complaints to Defendants' agents and employees opposing Defendant's unlawful, discriminatory employment practices based on age and gender.

80. As a result of Ms. Trudeau's complaints, Ruan's lawful agents and employees took materially adverse actions against Ms. Trudeau, including, but not limited to, issuing disciplinary warnings; threats of termination; reprimands by supervisors; and ultimately termination.

81. Defendant's adverse actions constituted retaliatory workplace harassment.

82. Ms. Trudeau was wrongfully terminated as a result of discrimination and retaliation on the basis her age and gender.

83. Defendant's discrimination, retaliation, and outrageous conduct caused Ms. Trudeau severe emotional distress that physically manifested in debilitating depression, sleeplessness, severe stress, changes in weight, and loss of enjoyment of life.

84. As a result of Defendants' discrimination and disparate treatment, Ms. Trudeau suffered substantial damages, including past and future lost wages, loss of earning capacity, lost retirement and insurance benefits, lost healthcare and child support benefits, and general damages of pain, suffering, emotional distress, and loss of enjoyment of life.

85. Ms. Trudeau seeks her actual compensatory damages arising from Defendants' discrimination and retaliation.

## IV. ATTORNEY'S FEES

86. As a result of the wrongful conduct of Defendants, as alleged above, Ms. Trudeau has been reasonably required to hire the law firm of Hepworth Law Offices to prosecute this action. Pursuant to I.C. 12–120(3), I.C. 12-121, 42 U.S.C. § 2000e-5(k), 29 U.S.C. § 626(b), 42 U.S.C. § 1981a, 42 U.S.C. § 1988, and Fed. R. Civ. P. 54(d)–(e), Ms. Trudeau is entitled to a reasonable award of costs and attorney's fees. A reasonable attorney's fee rate is $400.00 per hour for all time worked.

## V. DEMAND FOR TRIAL BY JURY

87. Ms. Trudeau demands a trial by jury pursuant to Fed. R. of Civ. P. 38, U.S. Const. Amendment VII, and Idaho Const. art. I, § 7, and 42 U.S.C. § 1981a(c).

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for judgment against Defendants as follows:

A. For money judgment as compensation for all past and future lost income, liquidated damages, and other special and general damages sustained by Ms. Trudeau, which will be

      proven at trial, but which damages will be substantial and more than $75,000.00;

B.    Reasonable value of all lost employment benefits, medical benefits, as well as retirement benefits;

C.    For reinstatement to her previous position or an equivalent, or in lieu of reinstatement, future lost wages in an amount to be proven at trial;

D.    For all reasonable court costs, expert fees, and attorney fees incurred by the Plaintiff in prosecution of the present action pursuant to Federal law and the laws of the State of Idaho;

E.    Monetary compensation for any additional tax liability incurred because of lump-sum judgment or other remuneration recovered;

F.    Pre-and/or post-judgment interest pursuant to 28 U.S.C. § 1961 and I.C. § 28-22-104;

G.    For such other and further relief as the Court deems just and equitable.

PLAINTIFF DEMANDS TRIAL BY JURY

DATED this 21st day of September, 2020.

HEPWORTH LAW OFFICES

By  /s/  *J. Grady Hepworth*

J. Grady Hepworth  
Jeffrey J. Hepworth  
*Attorneys for Plaintiff*

COMPLAINT AND DEMAND FOR JURY TRIAL - 15